REBECCA ESTEL WINSTON, PLAINTIFF-RESPONDENT, v. ATLANTIC CITY RAILROAD COMPANY, A CORPORATION, DEFENDANT-APPELLANT.

Argued March 4, 1925—Decided July 27, 1925.

Negligence—Railroad Setting Fire to Forest—Engines' Equipment For Preventing Fires Not Adequate—Alleged Liability of an Engine of Another Company Using the Same Right of Way Not Sustained—Judgment of $93,000 in View of All the Facts Apparently Not Excessive.

On defendant's rule to show cause why plaintiff's verdict should not be set aside.

Before Justices TRENCHARD and MINTURN.

For the rule, *Thompson & Hanstein.*

*Contra, William C. French.*

PER CURIAM.

This is defendant's rule to show cause why a new trial should not be granted on the grounds that the plaintiff's verdict of $93,000 is "against the weight of the evidence and the damages are excessive [reserving all exceptions]." Counsel for the defendant state in their brief that "it is not intended to argue here any of the exceptions allowed at the trial, or the submission of the case to the jury, or any other grounds of legal error."

The complaint charged that the defendant steam railroad company negligently operated its locomotive engine over its tracks adjoining plaintiff's land without having the same equipped, protected and maintained against the emission of sparks of fire, as provided by law, and that, by reason of the negligent operation of the engine, sparks of fire were emitted, fell upon the land adjoining the right of way, and communicated fire to the grass, &c., upon the land, and thence to the grass, &c., of the lands of plaintiff, and burned over four

thousand two hundred acres of plaintiff's property, destroying trees and humus.

The defense was a general denial of the allegations, and further—(1) that on the day in question the defendant's engine was equipped with a spark arrester in good condition, of a design in common use approved by experience; (2) that the roadway of defendant was clear and free of any combustible matter; (3) and that the fire in question was caused without any negligence on the part of the defendant, and defendant at all times was operating its trains in a proper and efficient manner and without any negligence on its part.

The physical situation was that the defendant company owned a double track line of railroad through the Risley station section, the place in question. By a working agreement between defendant and the Pennsylvania Railroad Company the latter also operated trains over the same right of way.

The defendant company strenuously urges that the jury found against the weight of the evidence when it found that the defendant started the fire at all.

We do not take that view. We think there was not only ample evidence, but the weight of the testimony was that the fire in question was started by engine No. 304 of the defendant, and not as contended by the defendant, by an engine of the Pennsylvania Railroad Company.

It seems a reasonable, and, indeed, a necessary inference, that the fire was started either by the defendant's engine or the Pennsylvania railroad engine, which passed the station in question shortly after the defendant's engine had passed. Now, several witnesses who were riding upon the Pennsylvania railroad train, which passed without stopping, testified that, as the train went by the Risley station, they saw the fire already started in the "Indian grass" near the station, and this they saw from the car window as the train was passing by. That testimony (to say nothing of other testimony to the same effect), and there seems no reason to question it, seems to demonstrate that the fire was not started by the Pennsylvania engine, but by the defendant's engine.

This becomes the more evident when we consider the testimony of the witnesses who made prompt examination of the fire and tried unsuccessfully to put it out. Frank Smith, a witness produced by the defendant, testified, in effect, that he was nearby and among the first persons at the fire (at which time it was "about one hundred feet square") ; that he picked up a hot (coal) cinder about an inch in diameter. Another witness, called by the plaintiff, fixed the point of starting of the fire one hundred and eighty-five feet from the rail of defendant's railroad. He testified that he found there "one large cinder partly consumed." Jennie Westing testified that she was in her front yard along the right of way, four thousand two hundred and seventy-five feet from the station, and saw the defendant's train making "black smoke and sparks" and "as she gained headway and got down to my house, after she had passed across the tracks, she began throwing sparks, I should judge from a ten-cent piece to a twenty-five-cent piece in size." "Q. And how many sparks? A. Quite a few. They were still warm. Q. Did you pick some up? A. I did. Q. And how soon after did you see the fire? A. Well, as I started across the track again I went to run down the road and I heard someone holler 'Fire.' I presume it was the shoemaker's daughter, and I got down to the shoemaker's place and it was very—it was a high wind, and I got very tired. Q. Was it a windy day? A. Very windy. Q. Which way was it blowing? A. Towards the station. Q. Now, bearing in mind the direction that the wind was blowing, was the place where you saw the fire in such a position so that the sparks, if they came from the smokestack, would have started that fire? A. Undoubtedly."

Much effort is expended by the defendant to show the improbability of the testimony of individual witnesses called by the plaintiff. It may well be that, in respect to some matters, some one or more of the numerous witnesses called by the plaintiff were mistaken, but we have not had anything brought to our attention which makes us think that this verdict upon this topic is against the weight of the evidence considered as a whole.

But the defendant insists that the jury's finding, as it must have found, that the defendant's spark arrester was not of approved pattern in general use in good condition at the time, was against the weight of the evidence.

We cannot agree that this is so. When we consider the testimony to which we have referred as to the size and shape of the cinders, which the jury could and did find started the fire and came from defendant's engine, it seems to us quite evident that the testimony of the defendant's mechanics and inspectors as to the condition of the spark arrester before and after the fire, raised no more than a fair jury question on this topic, depending in large measure upon the question of veracity of the respective witnesses, and we cannot say that the determination of the jury as to this phase of the case was against the weight of the evidence.

The next point is that the verdict is excessive. The verdict was for $93,000.

When we come to analyze the testimony upon the question of damages, it is difficult to perceive just how it can be said to be excessive.

The plaintiff proved by Professor Frisbie and other witnesses the extent of the fire, the number of acres burned over, and, approximately, the number of thousand feet of timber, its kind and value, destroyed; and we do not find that the defendant company has successfully discredited this testimony. The plaintiff's testimony, assuming its admissibility, which is not now challenged, tends to show damages aggregating more than double the verdict rendered. The testimony as to damages upon the part of the defendant, as we analyse it, would seem to justify, by way of damages, all that the jury allowed the plaintiff. We, therefore, cannot say that the verdict is excessive.

The rule to show cause will be discharged.